IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KEITH L. WOOLFORD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. No. 12-516-SLR |
| ) | |
| DR. LAWRENCE MCDONALD, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

Keith L. Woolford, Georgetown, Delaware. Pro se.

Daniel A. Griffith, Esquire and Scott G. Wilcox, Esquire of Whiteford Taylor Preston, LLC, Wilmington, Delaware. Counsel for Defendants Dr. Lawrence McDonald, Jill Moser, Mary Tolson, John Vanhoy, Richard Catts and Jeremy Knight.

Michael F. McTaggart, Deputy Attorney General, State of Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendant Michael Deloy.

**MEMORANDUM OPINION**

Dated: July 31, 2014
Wilmington, Delaware

*[signature]*
ROBINSON, District Judge

## I. INTRODUCTION

Keith L. Woolford ("plaintiff") is a sentenced inmate at the Sussex Correctional Institution ("SCI") in Georgetown, Delaware. On April 25, 2012, plaintiff filed a complaint and a motion to proceed in forma pauperis pursuant to 42 U.S.C. § 1983 against defendants Dr. Lawrence McDonald ("McDonald"), Richard Catts ("Catts"), and Mary Tolson ("Tolson"), seeking damages for deliberate indifference to a serious medical need in violation of the Eighth Amendment.[1] (D.I. 1; D.I. 3) Defendants are members of Correctional Care Solutions ("CCS"), a medical contractor servicing the medical needs of inmates at SCI. The court initially dismissed plaintiff's medical need claims because plaintiff did "not indicate when the alleged acts took place," and "many of the allegations f[e]ll under the aegis of a medical malpractice/negligence claim, rather than deliberate indifference." (D.I. 7 at 6) Plaintiff was granted leave to amend such claims. (*Id.* at 7)

Plaintiff filed an amended complaint on August 13, 2012 against McDonald, Tolson, and Catts, as well as Jill Moser ("Moser"), John Vanhoy ("Vanhoy"), and Jeremy Knight ("Knight") (collectively, the "CCS defendants"), and Michael Deloy ("Deloy") (collectively with the CCS defendants, the "defendants").[2] (D.I. 8) On March 12, 2013,

---

[1] The complaint also named Terah Chapman, Warden G.R. Johnson, Nurse Tracy, Nurse John, Nurse Charles Collins, Nurse John Doe #1, Nurse Jane Doe #1, and Nurse Jane Doe #2 as defendants. The court dismissed claims against these defendants as frivolous because they were not mentioned in the complaint. (D.I. 7 at 4) These defendants were not included in the amended complaint. (*See* D.I. 8)

[2] In addition to naming new defendants, the amended complaint provides more detailed factual allegations supporting plaintiff's medical need claims. (D.I. 8)

the court dismissed the amended complaint against the CSS defendants for failure of service. (D.I. 23) On April 11, 2013, plaintiff filed a motion to alter judgment (D.I. 27), which the court construed as a motion for reconsideration and granted, reinstating the CCS defendants. (D.I. 30) The amended complaint was served upon the CCS defendants; on June 26, 2013, they answered such complaint and asserted defenses. (D.I. 38) On August 23, 2013, Deloy answered the amended complaint and asserted defenses. (D.I. 41) Also on August 23, 2013, plaintiff filed a motion for default judgment (D.I. 40), which was denied. (D.I. 48) Presently before the court are motions for summary judgment filed separately by Deloy and the CCS defendants (D.I. 54; D.I. 65), as well as plaintiff's motions to compel discovery. (D.I. 73; D.I. 74) The court has jurisdiction over the claims asserted pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1331.

## II. BACKGROUND

On June 3, 2011, plaintiff became a sentenced inmate at SCI. (D.I. 8 at ¶ 1) At all relevant times, Deloy was the bureau chief for the Delaware Department of Correction, and CCS served as the medical contractor servicing the medical needs of inmates at SCI. Upon incarceration at SCI, plaintiff notified the medical department of his kidney transplant, which he received in December 2007, and other medical conditions. (*Id.*) Plaintiff is prescribed anti-rejection medication, which he is required to take daily for the remainder of his life. (*Id.* at ¶ 2) Any lapse may cause plaintiff's body to reject or scar the transplant, which could result in renal failure. (*Id.*)

Plaintiff has had an extensive medical history while incarcerated at SCI. He was first examined on June 8, 2011, and his medical records were consulted. (D.I. 67, ex. A at CCS-57, 63-65) He was then treated by Dr. McDonald in the chronic care facility of the prison infirmary on multiple occasions between May 31, 2012 and August 23, 2012.[3] He was also seen by outside specialists on numerous occasions. In particular, plaintiff was seen by Dr. Pedro, a kidney specialist, six times between January 26, 2011 and August 2, 2013.[4] Additionally, plaintiff visited Beebe Medical Center on June 14, 2012 due to complaints in the area of his kidney transplant (*id.* at 175; D.I. 68, ex. A at 205), and was later seen by Dr. Haydu on May 31, 2013 and June 10, 2013 for follow-up visits. (D.I. 67, ex. A at 140-46) Diagnostic and laboratory tests were frequently conducted during plaintiff's medical visits. The CCS defendants regularly filled and refilled plaintiff's medication.[5]

---

[3]Plaintiff was seen by Dr. McDonald on May 31, 2012, June 4, 2012, June 6, 2012, June 11, 2012, June 14, 2012, June 19, 2012, June 22, 2012, June 25, 2012, June 27, 2012, June 29, 2012, July 2, 2012, July 3 2012, July 5, 2012, July 9, 2012, July 23, 2012, July 31, 2012, August 1, 2012, August 13, 2012, August 20, 2012, and August 23, 2012. (*See* D.I. 68, ex. A at CCS-307-22)

[4]Plaintiff was seen by Dr. Pedro on January 26, 2011 (D.I. 68, ex. A at CCS-225, 335), May 31, 2012 (*id.* at 197-99, 207-15, 0217), August 30, 2012 (D.I. 67, ex. A at 172-73), September 7, 2012 (*id.* at 171), February 11, 2013 (*id.* at 158-60), and August 21, 2013. (*Id.* at 125, 127-130)

[5]Plaintiff's medication was filled or refilled on November 10, 2011 (D.I. 68, ex. A at CCS-336, 372), November 21, 2011 (*id.* at 362-65, 367-70), December 19, 2011 (*id.* at 560), January 3, 2012 (*id.* at 352), January 21, 2012 (*id.* at 556), February 20, 2012 (*id.* at 347), March 20, 2012 (*id.* at 331-34, 337, 343), April 12, 2012 (*id.* at 536), May 16, 2012 (*id.* at 529), June 15, 2012 (*id.* at 524), July 13, 2012 (*id.* at 526), and July 29, 2012. (*Id.* at 514)

Plaintiff filed several medical grievances, including ones on July 26, 2011 (D.I. 8 at ¶ 3) and on April 13, 2012 (D.I. 79),[6] stating that the CCS defendants failed to provide him his anti-rejection medication on multiple occasions.[7] Plaintiff also filed medical grievances complaining that the CCS defendants prescribed him medication that interfered with his anti-rejection medication and failed to schedule appointments with a kidney specialist for over a year after his incarceration. (D.I. 71 at 3) He further alleged that defendants Catts, Vanhoy, and Knight administered wrong doses of medication or medication prescribed to other inmates. (*Id.*)

The grievances were denied for various reasons. In particular, grievance number 243747, which was filed on April 23, 2012 and stated that plaintiff's medication had run out, was denied because the CCS defendants had refilled plaintiff's medication and administered it to plaintiff regularly, and because plaintiff indicated that he had not missed any doses of the medication. (D.I. 79 at 1) Tolson and other prison personnel denied plaintiff's initial appeal because physicians' orders demonstrated that plaintiff's medication had been ordered, and plaintiff had not missed any doses of his medication. (*Id.* at 3, 6) Plaintiff appealed the decision to Deloy who, after reviewing the

---

[6]D.I. 79, ex. 1-2 were intended to be filed as exhibits to Deloy's memorandum in support of summary judgment, D.I. 55, but were subsequently filed on July 22, 2014.

[7]Plaintiff alleges that the CCS defendants failed to provide plaintiff his anti-rejection medication for two consecutive days beginning on each of the following dates: June 29, 2011, July 26, 2011, August 27, 2011, September 25, 2011, October 26, 2011, November 25, 2011, December 28, 2011, January 25, 2012, February 25, 2012, March 15, 2012, March, 20, 2012, and April 13, 2012. Additionally, plaintiff alleges that the CCS defendants failed to provide plaintiff his anti-rejection medication on April 26, 2012. (D.I. 8 at ¶ 2)

documentation denied the appeal because plaintiff was receiving his medication and had not missed any doses. (*See id.* at 1, 6, ex. 1)

## III. STANDARDS OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 415 U.S. 574, 586 n. 10 (1986). A party asserting that a fact cannot be—or, alternatively, is—genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 415 U.S. at 587 (internal quotation marks omitted). The court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586–87; *see also Podohnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). Although the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," a factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 411 U.S. 242, 247–48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 411 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

## IV. DISCUSSION

Plaintiff alleges that defendants violated his Eighth Amendment right by acting with deliberate indifference to a serious medical need. Defendants move for summary judgment on the grounds that plaintiff has not established an Eighth Amendment violation. Specifically, the CCS defendants move for summary judgment on the grounds that plaintiff failed to: (1) develop any evidence that the CCS defendants were

6

deliberately indifferent to his medical needs; and (2) failed to exhaust his administrative remedies for the disputed claims. (D.I. 66 at 7-8) Deloy moves separately for summary judgment on the grounds that: (1) plaintiff failed to produce any evidence that would support a 42 U.S.C. § 1983 claim against him; and (2) Deloy is entitled to qualified immunity even if plaintiff establishes a constitutional violation. (D.I. 55 at 3)

**A. Eighth Amendment**

To state a violation of the Eighth Amendment right to adequate medical care, plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *accord White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990). Plaintiff must demonstrate: (1) that he had a serious medical need; and (2) that the defendant was aware of this need and was deliberately indifferent to it. *See West v. Keve*, 571 F.2d 158, 161 (3d Cir. 1978); *see also Boring v. Kozakiewicz*, 833 F.2d 468, 473 (3d Cir. 1987). Either actual intent or recklessness will afford an adequate basis to show deliberate indifference. *See Estelle*, 429 U.S. at 105.

The seriousness of a medical need may be demonstrated by showing that the need is "'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (quoting *Pace v. Fauver*, 479 F. Supp. 456, 458 (D. N.J. 1979)). Moreover,

"where denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious." *Id.*

As to the second requirement, an official's denial of an inmate's reasonable requests for medical treatment constitutes deliberate indifference if such denial subjects the inmate to undue suffering or a threat of tangible residual injury. *See id.* at 346. Deliberate indifference may also be present if necessary medical treatment is delayed for non-medical reasons, or if an official bars access to a physician capable of evaluating a prisoner's need for medical treatment. *See id.* at 347. However, an official's conduct does not constitute deliberate indifference unless it is accompanied by the requisite mental state. Specifically, "the official [must] know . . . of and disregard . . . an excessive risk to inmate health and safety; the official must be both aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). While a plaintiff must allege that the official was subjectively aware of the requisite risk, he may demonstrate that the official had knowledge of the risk through circumstantial evidence and "a fact finder may conclude that a[n] . . . official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842.

The law is clear that mere medical malpractice is insufficient to present a constitutional violation. *See Estelle*, 429 U.S. at 106; *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993). Prison authorities are given extensive liberty in the treatment of prisoners. *See Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir.

8

1979); *see also White*, 897 F.2d at 110 ("[C]ertainly no claim is stated when a doctor disagrees with the professional judgment of another doctor. There may, for example, be several acceptable ways to treat an illness."). The proper forum for a medical malpractice claim is in state court under the applicable tort law. *See Estelle*, 429 U.S. at 107.

## B. Plaintiff's Claims Against the CCS Defendants

Plaintiff alleges that the CCS defendants violated his Eighth Amendment right by failing to provide him his anti-rejection medication on multiple occasions from June 29, 2011 to April 26, 2012, prescribing him medication that interfered with his anti-rejection medication, and failing to schedule appointments with a kidney specialist in a timely manner. (D.I. 8 at ¶¶ 7, 9) Plaintiff further alleges that Catts, Vanhoy, and Knight administered wrong doses of medication, or medication prescribed to other inmates, to plaintiff. (*Id.* at ¶¶ 9-10, 12-13)

The record reflects that plaintiff has a serious medical need, having received a kidney transplant that requires ongoing medical attention. (D.I. 8 at ¶ 1; D.I. 76 at 3) In recognition of this need, the record further demonstrates that plaintiff received ongoing treatment for his kidney transplant, as well as treatment for edema. It is uncontested that plaintiff received medical care at the prison and from an outside kidney specialist. (D.I. 8 at ¶¶ 2, 4-16, 8-9; D.I. 66 at 3-6) Additionally, the uncontested evidence indicates that the CCS defendants filled or refilled plaintiff's medication on multiple occasions. (*See* D.I. 68, ex. A at CCS-331-34, 337, 343, 347, 352, 362-70, 372, 514,

524, 526, 529, 536, 556, 560) The alleged instances of the CCS defendants' failure to provide plaintiff his anti-rejection medication or administration of incorrect doses of his medication, even if true, are indicative of nothing more than negligence on the part of the medical providers. That is, consistent with the realities of an institutional setting, there may be periodic delays (as alleged, no more than a day or two) between refills of a medication, but such medication is otherwise provided on a daily basis as required. In light of this evidence, the record does not support a finding that the CCS defendants were deliberately indifferent to plaintiff's medical needs in violation of the Eighth Amendment.[8] Therefore, the court grants the CCS defendants' motion for summary judgment. (D.I. 65)

### C. Plaintiff's Claim against Deloy

Plaintiff's sole claim against Deloy is that Deloy violated plaintiff's Eighth Amendment right by denying his medical grievance appeals. (D.I. 8 at 5; D.I. 50 at 2) "A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable . . . and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (citations omitted). It is well-established that non-medical prison staff may not be "considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated

---

[8]As the court does not find that the CCS defendants violated the Eighth Amendment, it does not consider the CCS defendants' defense that plaintiff failed to exhaust his administrative remedies for the disputed claims.

10

Case 1:12-cv-00516-SLR Document 80 Filed 07/31/14 Page 12 of 13 PageID #: 780

by the prison doctor." *Durmer*, 991 F.2d at 69. The rationale for this rule has been aptly explained by the United States Court of Appeals for the Third Circuit in the following terms:

> If a prisoner is under the care of medical experts . . ., a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor. Moreover, under such a regime, non-medical officials could even have a perverse incentive not to delegate treatment responsibility to the very physicians most likely to be able to help prisoners, for fear of vicarious liability. Accordingly, we conclude that, absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.

*Spruill*, 372 F.3d at 236.

Deloy denied plaintiff's appeal of grievance number 243747 because the documentation reflected that plaintiff's medication had been refilled, plaintiff was receiving his medication, and plaintiff indicated that he had not missed any doses. (*See* D.I. 79 at 1, 6, ex. 1) In light of the extensive medical care provided plaintiff and the undisputed evidence that plaintiff's medication was regularly administered and refilled,

the record does not reflect that Deloy was deliberately indifferent to plaintiff's medical needs.[9] Therefore, the court grants Deloy's motion for summary judgment. (D.I. 54)

## V. CONCLUSION

For the above reasons, the court grants defendants' motions for summary judgment. (D.I. 54; D.I. 65) The court denies plaintiff's motions to compel discovery as moot. (D.I. 73; D.I. 74) An appropriate order will issue.

---

[9]As the court does not find that Deloy violated plaintiff's Eighth Amendment right, it does not consider Deloy's qualified immunity defense.